B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) **16-5108** |
|---|---|
| **PLAINTIFFS**<br>*Roseline Y. Charles* | **DEFENDANTS**<br>*Chrisiana Trust, Carrington Mortgage Services, LLC, Rushmore Loan Management Services, LLC, and McCalla Raymer* |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>*Pro Se*<br>*1944 Acorn Lane*<br>*Dacula, GA 30019* | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☑ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

*Complaint to determine validity of lien and debt, also FDCPA and RESPA violations*

---

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| FRBP 7001(1) – Recovery of Money/Property | FRBP 7001(6) – Dischargeability (continued) |
|---|---|
| ☐ 11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| ☐ 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| ☐ 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation |
| **FRBP 7001(2) – Validity, Priority or Extent of Lien** | (other than domestic support) |
| ☑ 21-Validity, priority or extent of lien or other interest in property | ☑ 65-Dischargeability - other |
| **FRBP 7001(3) – Approval of Sale of Property** | **FRBP 7001(7) – Injunctive Relief** |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 71-Injunctive relief - imposition of stay |
|  | ☐ 72-Injunctive relief - other |
| **FRBP 7001(4) – Objection/Revocation of Discharge** | |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest** |
|  | ☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation** | |
| ☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment** |
|  | ☐ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability** | |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | **FRBP 7001(10) Determination of Removed Action** |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud | ☐ 01-Determination of removed claim or cause |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | **Other** |
|  | ☐ SS-SIPA Case - 15 U.S.C. §§78aaa et.seq. |
| **(continued next column)** | ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $ *undetermined* |

Other Relief Sought

*Quiet Title to Land*

Filed in U.S. Bankruptcy Court
Atlanta, Georgia

MAY 1 8 2016

M. Regina Thomas, Clerk

By:_____
Deputy Clerk

#1

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>*ROSELINE Y. CHARLES* | BANKRUPTCY CASE NO.<br>*1-16-BK-57698* | |
| DISTRICT IN WHICH CASE IS PENDING<br>*NORTHERN DISTRICT OF GA* | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>*ROSELINE Y. CHARLES* | DEFENDANT<br>*CHRISTIANA TRUST, et al,* | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>*NORTHERN District OF GEORGIA* | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Roseline Charles* | | |
| DATE<br>*5-16-2016* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>*ROSELINE Y. CHARLES* | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Filed in U.S. Bankruptcy Court
Atlanta, Georgia

MAY 1 8 2016

M. Regina Thomas, Clerk

By:_____
Deputy Clerk

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re:<br>ROSELINE Y. CHARLES, | ) | Chapter 7 |
| | | Case No. 16-57698-pwb |
| Debtor, | ) | |
| | ) | |
| ROSELINE Y. CHARLES, | ) | |
| Plaintiff, | ) | ADVERSARY PROCEEDING |
| | ) | No. **16-5108** |
| v. | ) | |
| | ) | |
| CHRISTIANA TRUST, A DIVISION<br>OF WILMINGTON SAVINGS FUND | ) | |
| SOCIETY, FSB, AS TRUSTEE FOR<br>STANWICH MORTGAGE LOAN TRUST, | ) | |
| SERIES 2013-7 and CARRINGTON<br>MORTGAGE SERVICES, LLC, | ) | |
| RUSHMORE LOAN MANAGEMENT<br>SERVICES, LLC, and McCALLA | ) | |
| RAYMER, LLC., | | |
| Defendants, | ) | |

## COMPLAINT
### TO DETERMINE VALIDITY AND EXTENT OF LIEN
### VALIDITY, STATUS AND DISCHARGEABILITY OF DEBT
### AND FOR OTHER RELIEF AND DAMAGES

Plaintiff complains of defendants and alleges as follows:

This action is brought pursuant to OCGA 23-3-61 and O.C.G.A. 23-3-40

1

seeking to remove a cloud on the title to her real property and a decree that none of the defendants have rights, title or interests in the property for the reasons set forth hereafter. Additionally, based on the foregoing, Plaintiff asserts her claim under the Fair Debt Collection Practices Act (F.D.C.P.A.) to the extent that defendants attempted and continue to attempt to collect a debt despite a complete lack of ownership of her Promissory Note and the lack of a complete chain of title to her Security Deed. For purposes of the statute of limitations as to matters alleged at paragraphs 1-29 hereafter, the relevant limitations period is tolled for the reason that the identical facts and claims had been alleged in a prior District Court action commenced by Plaintiff (1:14-cv-03398-RWS, *Charles v. Christiana Trust et al.*) in which she voluntarily dismissed those claims on July 6, 2015 [see, Doc. 19] giving her until July 2016 to re-file. There are also however new facts and claims as a result of subsequent acts on the part of certain Defendants.

## **FIRST CLAIM-QUIET TITLE**

1.    On February 1, 2007, Plaintiff executed an adjustable rate Note and Security Deed in favor of defendant Branch Banking and Trust Company ("BB&T") for property located at 1944 Acorn Lane, in Gwinnett County Georgia ("the property").

2.   The loan carried a high initial interest rate of 9.25% and plaintiff soon

2

realized that she would need an adjustment not only because the interest rate was extremely high but also because plaintiff experienced a reduction in her income. As a result, plaintiff filed for Chapter 13 Bankruptcy protection.

3.  During the course of the bankruptcy proceedings, BB&T filed a Proof of Claim dated May 5, 2010, identifying itself as the secured creditor and attaching thereto a purported copy of plaintiff's Note and Security Deed. A copy of this Proof of Claim is attached hereto as **EXHIBIT A.**   Plaintiff however denies that the signatures appearing on these documents are her signatures.

4.   On September 27, 2010, BB&T filed in Plaintiff's bankruptcy case a "Transfer of Claim Other Than for Security." By this transfer, BB&T transferred plaintiff's loan to Saxon Mortgage Services, Incorporated. **(EXHIBIT B)**. However, nothing in the Gwinnett County land records reflect this transfer to Saxon.

5. Although BB&T had already transferred its Claim to Saxon by the above-referenced bankruptcy transfer, Gwinnett County land records contain another "Assignment" by BB&T dated July 25, 2012, whereby BB&T purportedly assigned plaintiff's Security Deed to FV-1, Inc., "in trust for Morgan Stanley Mortgage Capital Holdings LLC. The "Attorney in Fact" executing this transfer in behalf of BB&T, was Morgan Stanley Mortgage Capital Holdings LLC.

3

**(EXHIBIT C).**

6.    As if completely oblivious to the fact that (1), BB&T had already filed a Proof of Claim referencing plaintiff's loan and Note and (2), that BB&T had already purportedly transferred that claim to Saxon in September 2010, Specialized Loan Servicing, LLC, as servicing agent for FV-I, Inc., "in trust for Morgan Stanley Mortgage Capital Holdings, LLC", filed a separate and different Proof of Claim in plaintiff's bankruptcy case on November 9, 2012. **(EXHIBIT D).**

7.    The supporting evidence attached to the Claim filed in behalf of FV-1, consisted of the exact same photocopies of plaintiff's purported Note and Security Deed which had been attached to the Claim of BB&T. Notably, the Note which is attached to the FV-1 Claim, had not been endorsed to FV-1 or any other entity--nor was it endorsed in blank.

8.    Approximately eight months after the above referenced FV-1 Assignment of July 2012, a "Corrective Assignment" to FV-1 was recorded on March 5, 2013, referencing the previous assignment and which appears to be a correction to the reference to FV-1 "as trustee" for Morgan Stanley Mortgage Capital Holdings LLC., as opposed to the previous language referencing the assignment to FV-1 "in trust" for  Morgan Stanley Mortgage Capital Holdings LLC, **(EXHIBIT E).**

4

9.    Morgan Stanley Mortgage Capital Holdings LLC, acting as "Attorney in fact for BB&T", could not have transferred anything to FV-1 because there was nothing to transfer. BB&T had, more than a year earlier in September 2010, already filed a transfer of its Claim to Saxon Mortgage Services during plaintiff's bankruptcy.

10.    At some point and time, the defendant Christiana Trust, as Trustee for Stanwich Mortgage Loan Trust 2013-7, claims to have acquired certain security interests regarding plaintiff's loan and property. Christiana had not demonstrated to plaintiff how it obtained such interest upon her request for that information nor had any assignment been received and recorded in the land records.

11.    Gwinnett County land records revealed no transfer or assignment of plaintiff's Note or Security Deed to Christiana Trust in behalf of Stanwich or any other trust.

12.    There were thus multiple breaks in the chain of assignments of plaintiff's Note and Deed and a substantial question as to whether defendant Christiana Trust has an assignment at all let alone a broken chain of assignments—as none appeared of record.

13.    Because there exists a broken chain of the assignments and missing or non-existing assignments to plaintiff's Security Deed and Note which Christiana

5

Trust claims to own or hold, the same are unenforceable by Christiana and

Christiana either knows or should know, that it has no assignment whatsoever

and/or no legally valid assignment and an unbroken chain of assignments of

plaintiff's Note and Deed.

14.

> " Under Georgia law, an assignee to a contract **must establish** that
> **there are no breaks in the chain of assignment** to demonstrate it
> is the real party in interest to bring a lawsuit. See, e.g., *Green v.
> Cavalry Portfolio Servs. LLC*, 305 Ga. App. 843, 843, 700 S.E.2d
> 741, 742 (2010) ("Because nothing in the record shows an
> assignment of the contract rights from Union Acceptance
> Corporation to Union Acceptance Company, LLC, there is a break
> in the chain of written assignments necessary to establish that CPS
> was the real party in interest to bring the suit on the contract.")
> (citing *Wirth v. Cach, LLC*, 300 Ga. App. 488, 685 S.E.2d 433
> (2009)). This alone would be sufficient to sustain the Debtor's
> objections in this case, as there is no evidence whatsoever showing
> any link between the first and second assignees and between the
> third assignee and Capital Recovery, LLC. However, under Georgia
> law, Capital Recovery III, LLC, failed to properly establish any
> assignments. "

*In Re Stephens* (Bankr. M.D. Ga. 12-20-2010), 443 B.R. 225, *In Re: Dixie D.*

*Stephens* CHAPTER 7, Debtor. United States Bankruptcy Court, M.D. Georgia.

CASE NO.: 09-40808-JTL., December 20, 2010. See also, *Nyankojo v. North*

*Star Capital Acquisition*, 298 Ga. App. 6, 679 S.E.2d 57 (2009)

15.  Plaintiff has a duly recorded interest in her property by virtue of a Warranty

Deed executed to her by Rising Homes, Inc., dated February 1, 2007, a copy of

which is attached hereto as **EXHIBIT F** and the associated plat of survey attached as **EXHIBIT G**.

16.  Plaintiff is currently in possession of the property. The claims of right and title by Christiana Trust constitute a cloud on plaintiff's rights and title and she is entitled to have this cloud removed.

17.  Notwithstanding Christiana's total lack of any security interest and lack of ownership and/or legally valid ownership of plaintiff's Note in behalf of Stanwich or any other Trust, Christiana, acting by and through its purported mortgage servicer, Carrington Mortgage Services, LLC, attempted to collect on the instruments by sending plaintiff letters demanding payment and stating that she was in arrears of $430, 941 regarding a debt owed to Christiana Trust. Carrington continued to send such letters and notices at various times within a year of the filing date of plaintiff's first district court complaint.

18.  Georgia law further restricts the manner by which a promissory Note can be transferred or assigned if such assignment is to be valid. Specifically, Georgia requires that assignments (to be valid) must be made on the note itself or a sufficient allonge if there is no room on the front or back of the note. This is explained by the court in *Tallahassee Bank & Trust vs Raines et al.*, 125 Ga. App. 263, 187 SE 2d. 320 (1972):

7

"Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement . . . **An indorsement must be written . . . on the instrument or on a paper so firmly affixed thereto as to become a part thereof."** Code Ann. 109A-3--202. **This means that a separate paper pinned or clipped to an instrument is an insufficient indorsement.** The paper must be "so firmly affixed to the instrument as to become an extension or part of it. Such a paper is called an allonge."

Comment 3 to 3-202 of the 1962 Official Text of the Uniform Commercial Code. Both Black's Law Dictionary and CJS define an allonge as a paper attached to a bill or note for the purpose of writing indorsements when there is no room on the instrument itself.

**We believe the clear import of these sections precludes the separate assignment made by Vinson from operating as an indorsement of these notes. The record shows there was adequate room on both the front and back of these notes for his signature--which is all that is necessary for an indorsement in blank."**

See also *Kensington Partners, LLC v. Beal Bank Nevada*, 311 Ga. App. 196, 715.

S.E.2d 491 (2011).

19.

"Under Georgia law, the party entitled to enforce a promissory note is the "holder" of the note. See O.C.G.A. § 11-3-301; 11-3-308. 'A 'holder' of an instrument 'means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession.'" *Salahat v. F.D.I.C.*, __ S.E.2d __, 2009 WL 1859165, *3 (Ga. App. June 30, 2009)."

*In re: Darlington*, No. 09-10691-WHD, U.S. Bankruptcy Court Northern District

of Georgia, Newnan Division [Doc. No. 30].

20.   Notwithstanding the complete lack of an endorsement of Plaintiff's

8

promissory note as required by and consistent with, Georgia commercial codes, defendants attempted to claim such rights at the various times noted herein including those hereafter set forth in paragraphs 30-39 and incorporated herein, have attempted to enforce such instruments as well.

### SECOND CLAIM- Fair Debt Collection Practices Act

21.     Plaintiff incorporates the foregoing claim and allegations and further alleges that the FDCPA prohibits a debt collector from taking or threatening to take any action, namely engaging in collection activities, when such action cannot legally be taken. (1692 f(6). The FDCPA also prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt...". 1692e.

22.     Carrington Mortgage Services has, within the past year, engaged in collection attempts related to Plaintiff's loan in behalf of the Stanwich Trust as trustee for Stanwich. Claiming that Plaintiff's loan was in default. Upon information and belief, Carrington later transferred its servicing rights to Rushmore Loan Services, LLC.

23.     On September 5, 2014, McCalla Raymer, LLC, acting in behalf of Rushmore, sent plaintiff a letter attempting to collect a debt, demanding payment on plaintiff's promissory note.   A copy of this letter is attached hereto as

9

**EXHIBIT H**.  McCalla Raymer is one of the largest foreclosure law firms in Georgia and is regularly hired by the large financial institutions for the purpose of collecting debts evidenced by promissory notes by sending what has been referred to as 'dunning' notices and letters to borrowers and initiating foreclosures thru a "notice of sale under power, in the enforcement of security instruments. McCalla regularly uses the mails in sending such notices.

24.    Carrington, Rushmore and McCalla regularly engage in the business of collecting debts owed to others in the form of promissory notes and other loan obligations incurred for personal, family or household purposes. Within the year before this complaint was filed, each of these defendants have sent hundreds of demand letters and notices containing the same or substantially similar language to that found in the letter attached as EXHIBIT H and regularly use the mails to send such notices to borrowers. Moreover, at the time Plaintiff's loan was purportedly transferred to Rushmore, the loan (according to Carrington) was in default. The Defendants Carrington, Rushmore and McCalla, are thus debt collectors within the meaning of 15 U.S.C. § 1692a.

25.    Plaintiff alleges that defendants McCalla, Rushmore and Chritiana have falsely represented or have used misleading information in their attempts to collect/demand payment on plaintiff's promissory note in that (1) defendants, as

10

agents/representatives of Christiana Trust and/or Stanwich, have falsely represented within the past year of the filing of this suit, that Rushmore (and at other times Christiana in behalf of the Stanwich Trust) was the entity to whom plaintiff owed a debt (presumably implying the promissory note executed by plaintiff to BB&T).

26. However, for the reasons set forth above, neither Rushmore or Christiana ever owned or held Plaintiff's Note in their own behalf or in behalf of anyone else and had no right to enforce the Note at any time relevant to facts set out above. Alleging further, even in the McCalla letter (Exhibit H hereto) McCalla expressly stated that Rushmore "may not be the recorded holder of the Security Deed".

27. Despite acknowledging that Rushmore "may not be the holder of the Security Deed" McCalla stated in the same letter that, "This law firm is seeking to foreclose the creditor's lien on the real estate". McCalla does not however purport to have been hired by the "creditor" but rather "RUSHMORE LOAN MANAGEMENT SERVICES, LLC who is authorized to receive payment on [plaintiff's] loan". McCalla thereby is misleading plaintiff as to its authority to act on behalf of the actual creditor.

28. Defendants, in addition to attempting to collect a debt by accelerating Plaintiff's Note, did, thru McCalla, attempt to enforce a security interest when

there was no present right to do so based on the foregoing facts and further communicated false and misleading information regarding the status of plaintiff's debt, specifically that it was due and owing to a defendant named in this suit, all of which conduct is in violation of 15 U.S.C. § 1692e and 1692f(6) without limitation to other possible violations supported by these facts. Plaintiff is thus entitled to all damages occasioned by such conduct, including without limitation, damages for her emotional distress and pain and suffering as set out in paragraphs 40-41 hereafter.

## Defendants' Admissions to the Truth of the Above Facts.

29.     As noted in the introduction on the first page hereof, Plaintiff filed suit in District Court on October 22, 2014, alleging that Defendants, in accelerating her Note and threatening to enforce a security interests, had no right to do so because, among other things, no assignment of her Note and Deed had taken place and that no record of any such assignment appeared of record at the time the actions were taken.

30.     Because these facts were raised in the prior district court complaint, Defendants became aware that they failed to cover their tracks and then subsequently conveniently executed an "ASSIGNMENT OF SECURITY DEED" dated December 8, 2015, purporting to assign Plaintiff's Note and her Security

Deed to Christiana Trust as Trustee for the subject Trust. A copy of this recorded assignment is attached hereto as **EXHIBIT I**.

31.     However, such an assignment clearly demonstrates that at the time Defendants attempted to collect the debt and enforce a security interest as alleged above, no assignment of the Note or Security Deed in fact existed at that time.

32.     Plaintiff further alleges that the purported attempt to assign the Note and Deed by way of the December 2015 assignment was invalid on its face because (among other reasons) the assignor, FV-1 obviously had no possession of the Note or Deed to have made any transfer because the subject Trust had already claimed  possession and ownership for more than a year before this assignment was executed. Moreover, the Note could not have been endorsed or negotiated to the subject Trust via the December 2015 assignment for the same reason.

33.     Plaintiff alleges that the subject Trust still does not have possession of her Note and Deed despite this after-the-fact attempt to cure the broken chain of assignments and that the December 8, 2015 assignment was fraudulent in that the assignor FV-1 Incorporated, never had actual possession of Plaintiff's documents and only executed and recorded the December 2015 assignment **for appearances only and to facilitate a foreclosure.**

34.     Subsequent to her voluntary dismissal of her district court complaint,

Rushmore pretended to engage Plaintiff in a loan modification offer which was no offer at all but was merely an attempt to effect a deed-in lieu of foreclosure. No effort or suggestion was ever communicated with to Plaintiff that she was evaluated under any particular program and the letters sent to her appeared to be nothing more than computer generated notices and letters.

35.   Plaintiff sent Rushmore a Qualified Written Request (QWR) seeking a copy of the mortgage loan schedule required to be filed with the Securities and Exchange Commission as a first step in investigating whether in fact her loan was ever mentioned as being a part of the subject Trust.

36.   However, Rushmore refused to supply that information and in lieu thereof only provided Plaintiff with a purported copy of her Note and Deed which, nevertheless, contained no endorsements whatsoever even from the original lender BB&T. See **EXHIBIT J**.

37.   In fact the purported securitization of plaintiff's loan (which occurred twice—once in the Morgan Stanley Trust and then the Stanwich Trust) was to have resulted in at least three additional transfers/assignments and possession of the loan **for each securitization**. Each Securitization involves a sponsor who acquires the mortgage loans to be pooled by origination or purchase who then sells/transfers the loans to a depositor and the depositor then transfers the loans to

14

the trust (the special purpose asset-backed security).[1]    This implies in the instant case that Plaintiff's loan documents should have reflected a minimum of six transfers/assignments between the two Trusts. But there is not the first endorsement on the Note and only three recorded transfers of the Security Deed.

38.    Notwithstanding, based upon the fraudulent, convenient and invalid December 8, 2015 assignment and aided by its refusal to produce even a mortgage loan schedule which showed Plaintiff's Note being contained therein[2], Rushmore and Defendant McCalla Raymer, as debt collecting counsel for Rushmore, again

---

[1]  See for example Securities and Exchange Commission's Final Rule--"[RELEASE NOS. 33-8518; 34-50905; File No. S7-21-04] RIN 3235-AF74 ASSET-BACKED SECURITIES" available at:
<https://www.sec.gov/rules/final/33-8518.htm#P222_40373 :

> "A sponsor typically initiates a securitization transaction by selling or pledging to a specially created issuing entity a group of financial assets that the sponsor either has originated itself or has purchased in the secondary market. Sponsors of asset-backed securities often include banks, mortgage companies, finance companies, investment banks and other entities that originate or acquire and package financial assets for resale as ABS. In some instances, the transfer of assets is a two-step process: the financial assets are transferred by the sponsor first to an intermediate entity, often a limited purpose entity created by the sponsor for a securitization program and commonly called a depositor, and then the depositor will transfer the assets to the issuing entity for the particular asset-backed transaction."
> The issuing entity, most often a trust with an independent trustee, then issues asset-backed securities to investors that are either backed by or represent interests in the assets transferred to it.

[2]
  To be clear, Plaintiff does not intend to imply that a mortgage loan schedule would be definitive proof that the Trust possesses her loan. To the contrary, she alleges that the signature appearing on the purported copy of her Note is not authentic in addition to the facts which show a lack of a succession and transfer of possession of the note as evidenced by the lack of any endorsements thereon.

made demands for payment and purported to accelerate Plaintiff's Note in behalf

of the Stanwich Trust and also threatened to foreclose by mailing a "Notice of

Sale Under Power". (**EXHIBIT K**).

### THIRD CLAIM
### Violation of the RESPA
### Against Rushmore

39.     Plaintiff incorporates her allegations under paragraphs 35-37, and

alleges that Rushmore violated the RESPA's requirement and duty to respond to

her request for information seeking evidence via a mortgage loan schedule

identifying her loan as among those included in the subject Trust. Rushmore's bad

faith refusal was an effort to hide the fact that the Subject Trust does not have

possession of her loan and that it may never have been deposited in the subject

Trust.

40.     Plaintiff has suffered and continues to suffer from the anxiety, anger

and frustration and mental pain and anguish at the thought of and realization that

Rushmore was attempting take her home by way of false pretenses of ownership

by the Trust and its repeated failure to supply information in regards thereto.

41.     Plaintiff has suffered loss of sleep and headaches from her anguish,

anger and frustration with Rushmore all of which entitles her to actual damages

and statutory damages. Plaintiff has suffered monetary losses in the filing a legal

16

actions and bankruptcy on account defendants conduct as well as damages to her credit by reason a foreclosure filings appearing thereon which should never have occurred and for which all defendants are responsible in claims hereafter alleged.

## FOURTH CLAIM-NEGLIGENCE
### Against All Defendants
### Breach of Duty of Good Faith and Fair Dealing as to the Note

42.     Plaintiff incorporates her allegations in paragraphs 1- 38, and alleges further that all defendants by their acts and conduct in attempting to accelerate her Note violated the legal duty of good faith and fair dealing in the enforcement of contracts.

43.     Defendants' false representations as to the Trust's ownership of the Note and Deed were intentional and/or reckless and have caused Plaintiff to suffer the damages set forth in paragraph 40-41 above and which were reasonably forseeable.

44.     Because Defendants acted wantonly and intentionally, Plaintiff is entitled to punitive damages.

## FIFTH CLAIM-NEGLIGENCE
### Against All Defendants
### Breach of Duty of Good Faith and Fair Dealing as to the Deed

45.     Plaintiff incorporates her allegations in paragraphs 1- 38, and alleges further that all Defendants by their acts and conduct in attempting to enforce a

17

security interest under the Security Deed, violated the legal duty of good faith and fair dealing in the enforcement of contracts.

46.    Defendants' false representations as to the Trust's ownership of the Note and Deed were intentional and/or reckless and have caused Plaintiff to suffer the damages set forth in paragraphs 40-41 above and which were reasonably forseeable.

47.    Because Defendants acted wantonly and intentionally, Plaintiff is entitled to punitive damages.

## SIXTH CLAIM
### Civil Conspiracy
### Against All Defendants

48.    Plaintiff incorporates the allegations of the FOURTH and FIFTH Claim and alleges that all Defendants conspired and agreed to engage in the intentional acts amounting to negligence in the enforcement of the Note and Deed.

49.    The purpose of the conspiracy was to obtain Plaintiff's home through foreclosure and that although Plaintiff has not yet lost her home to Defendants wrongful acts, she has suffered the damages alleged in paragraphs 40-41 and is additionally entitled to punitive damages.

## DECLARATORY JUDGMENT

50.    Plaintiff incorporates the previous allegations and further alleges that

18

because no Defendant has a valid interest in either her Promissory Note or Security Deed, she is entitled to a declaration to this effect and an order expunging the underlying Security Deed and/or canceling same. Plaintiff is further entitled to a declaration that the debt is unsecured and dischargeable as an unsecured debt to the extent a debt owed to defendants exists.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

1.    That the Court declare that defendants have no valid title and rights with respect to plaintiff's property, promissory note or security deed;

2.   That plaintiff recover all compensatory damage and/or economic losses and statutory damages occasioned by their violation(s) of the FDCPA;

3.  That she have and recover of defendants her reasonable attorney fees (if any) associated with this action to the extent such is occurred;

4.   That she have a trial by jury on any triable issue;

5.   That she have any other and such further relief as to the Court seems just.

This __16__ day of May, 2016.

By: _Roseline Charles_____
      Roseline Y. Charles

19

# EXHIBIT- A

9

Case 16-05108-pwb Doc 3-1 Filed 05/16/16 Entered 05/16/16 12:48:47 Desc Main
Case 2:11-cv-03398-RWS Document 9-1 Filed 10/22/14 Page 2 of 11
Case 10-73344-jrs Claim 4-1 Filed 05/18/10 Desc Main Document Page 23 of 85
Document Page 1 of 10

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT  NORTHERN DISTRICT OF GEORGIA | PROOF OF CLAIM |
|---|---|
| Name of Debtor:  **Roseline Charles** | Case Number:  **10-73344** |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**Branch Banking & Trust Company**<br>BB&T is servicing this account on behalf of itself or one of its affiliates (hereafter collectively "BB&T"). | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>**Branch Banking & Trust Company, Bankruptcy Section/100-50-01-51**<br><br>**PO Box 1847**<br><br>**Wilson NC 27894-1847**<br>Telephone number:  **(866) 813-1624** | **Court Claim Number:** _____<br>*(If known)*<br><br>Filed on: _____ |
| Name and address where payments should be sent (if different from above):<br><br><br><br>Telephone number: | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1.** Amount of Claim as of Date Case Filed:  **$394,890.34**<br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or charges. | **5.** Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim: |
| **2. Basis for Claim: Money loaned**<br>(See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **3.** Last four digits of any number by which creditor identifies debtor:  **8890**<br><br>    3a. Debtor may have scheduled account as: _____<br>    (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507(a)(4). |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff:   ☒ Real Estate   ☐ Motor Vehicle   ☐ Other<br><br>Describe: _____<br><br>Value of Property: $_____     Annual Interest Rate **6.00**%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim, **the Trustee has authority to amend the arrearage for post petition payments per the confirmed plan.**<br><br>If any $ **7,216.76**     Basis for perfection: **See Attached**<br><br>Amount of Secured Claim: **$394,890.34**     Amount Unsecured: $_____ | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).<br><br>☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507(a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____) |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br>$ _____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attached redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, explain. | *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| Date:<br><br>**05/18/10** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>**/s/ Michael J. Ransom     Michael J. Ransom, Assistant Vice President** | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

1:04:44 Tue May 18 2010 Case 1:12-cv-03398-RWS Document 9-1 Filed 05/16/16 12:48:47 Page 3 of 11 Desc Main
Case 16-05108-pwb Doc 1 Filed 05/16/16 Entered 05/16/16 12:48:47 Desc Main
Document Page 24 of 85
Case 10-73344-jrs Claim 4-1 Filed 05/18/10 Desc Main Document Page 2 of 10

```
PAY4                 AS-OF 05/18/10   PAYOFF CALCULATION TOTALS 05/17/10  11:04:25
NAME R CHARLES  CONTACT NAME ROSELINE CHARLES
-------------------------------------------------------------------------------
PRINCIPAL BALANCE         382,731.02      ---------- RATE CHANGES ----------
INTEREST 05/18/10           6,810.53 CALC  INT FROM     RATE        AMOUNT
PRO RATA MIP/PMI                 .00       02/01/10  6.00000      6,810.53
ESCROW ADVANCE              8,221.54       05/18/10
ESCROW BALANCE                   .00
SUSPENSE BALANCE            2,000.00-
HUD BALANCE                      .00
REPLACEMENT RESERVE              .00
RESTRICTED ESCROW                .00
TOTAL-FEES                       .00 W 2
ACCUM LATE CHARGES             70.90
ACCUM NSF CHARGES                .00
OTHER FEES DUE                   .00
PENALTY INTEREST                 .00
FLAT/OTHER PENALTY FEE           .00   TOTAL INTEREST          6,810.53
CR LIFE/ORIG FEE RBATE           .00   TOTAL TO PAYOFF       395,833.99
RECOVERABLE BALANCE              .00 NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
-------------------------------------------------------------------------------
```

$395,833.99
-    943.65 interest
+     0.00 payment received
+     0.00 recoverable fees
-     0.00 late charge
-     0.00 property inspection
$394,890.34 payoff as of 05/03/10.
Regular monthly payment of $3,048.62
due by 06/01/10.

BB&T Confidential

Case 16-05108-pwb -0398-RWS Document 1-1 Filed 05/16/16 Entered 05/16/16 12:48:47 Page 4 of 11 Desc Main
Case 1:14-cv-03398-RWS Document 1-1 Filed 02/22/14 Page 4 of 11
Case 10-73344-jrs   Claim 4-1   Filed 05/18/10   Desc Main Document   Page 3 of 10
Document   Page 25 of 85

BANKRUPTCY PROOF OF CLAIM    (PRE-PETITION)                    05/18/10   11:09:29

BANKRUPTCY CASE NUMBER: 10-73344              CHAPTER: 13
          FILING DATE: 05/03/10
          LOAN NUMBER: [        ]        MTGR SSN: [        ]
          LOAN TYPE: CONV RES

*********************************************************************************
                         ESCROW HEADER NOT FOUND
*********************************************************************************



MORTGAGOR  ROSELINE CHARLES

           1944 ACORN LN
           DACULA            GA
           30019

PROPERTY ADDRESS:    1944      ACORN LN         DACULA              GA 30019

CLAIMED      ACKNOWLEDGED    CONFIRMED    CLAIM TOTAL   CONFIRMED TOTAL   PRIN BALANCE
05/03/10                                   7,216.76         7,216.76      382,731.02

---------------- PAYMENTS -------------------   --------- LATE CHARGES -------
DUE DATE THRU   DUE DATE    AMOUNT        TOTAL   NUM  AMOUNT             TOTAL
03/01/10   -    03/01/10  1,048.62      1048.62   000    .00               .00
04/01/10   -    05/01/10  3,048.62      6097.24   000    .00               .00

PAYMENT TOTALS:  03/01/10 - 05/01/10   7145.86   000                      .00

-------------------------------- FEES ----------------------------------------

FEE TYPE  FEE DESCRIPTION       CLAIMED      CONFIRMED   AMOUNT PAID
  LC      LATE CHARGES           70.90         70.90        .00

FEE TOTALS:                      70.90         70.90        .00

BB&T Confidential

# ADJUSTABLE RATE NOTE

Loan # 07-6060436

(LIBOR Six-Month Index (As Published in The Wall Street Journal) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

02/01/2007          DULUTH          GA
[Date]              [City]          [State]

1944 ACORN LANE, DACULA, GA 30019
[Property Address]

**1 BORROWER'S PROMISE TO PAY** In return for a loan that I have received, I promise to pay U S $349,851.00 (this amount is called "Principal"), plus interest, to the order of Lender Lender is

**BRANCH BANKING AND TRUST CO**

I will make all payments under this Note in the form of cash, check or money order
I understand that the Lender may transfer this Note The Lender, or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder"

**2. INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid I will pay interest at a yearly rate of 9.250%    The interest rate I will pay may change in accordance with Section 4 of this Note   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default as described in Section 7(B) of this Note

**3 PAYMENTS**

(A) Time and Place of Payments  I will pay principal and interest by making a payment every month  I will make my monthly payments on the first  day of each month beginning on  03/01/2007    I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal  If, on 02/01/2037 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "
I will make my monthly payments at 1526 KLONDIKE RD  SUITE 400, CONYERS, GA 30094,
or at a different place if required by the Note Holder

(B) Amount of My Initial Monthly Payments  Each of my initial monthly payments will be in the amount of U S$2,878.14
This amount may change

(C) Monthly Payment Changes  Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note

**4 INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates  The interest rate I will pay may change on the first day of  February, 2010  and on that day every  6  months thereafter  Each date on which my interest rate could change is called a "Change Date "

(B) The Index  Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is the average of interbank offered rates for six month U S dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index "
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice

(C) Calculation of Changes  Before each Change Date, the Note Holder will calculate my new interest rate by adding  6 250 percentage point(s) ( 6 250% ) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

(D) Limits on Interest Rate Changes  The interest rate I am required to pay at the first Change Date will not be greater than 12 250% or less than  9 250%    Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  1 000  percentage point(s) ( 1 000% ) from the rate of interest I have been paying for the preceding  6  months My interest rate will never be greater than  15.250%

(E) Effective Date of Changes  My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

(F) Notice of Changes  The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change  The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice

**5 BORROWER'S RIGHT TO PREPAY** I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known as a "Prepayment"  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note  If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes  My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment  However, any reduction due to my partial Prepayment may be offset by an interest rate increase

**6 LOAN CHARGES** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment

Page 1 of 2

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) Single Family—FNMA Form 3520 1/01

Management Systems Development Inc  (313) 519-3111      Loan Energizer™      &XX_armanpysmmnt 4/13/2004    Copyright (c) 2005-2006

BB&T Confidential

Case 16-05108-jwb  Doc 1  Filed 05/16/16  Entered 05/16/16 12:48:47  Desc Main
Case 1:14-cv-03398-RWS  Document 9-1  Filed 10/22/14  Page 6 of 11  Document  Page 5 of 10

Case 10-73344-jrs          Claim 4-1    Filed 05/18/10    Desc Main Document    Page 5 of 10

**7 BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments  If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder  The amount of the charge will be  5 0 %  of my overdue payment of principal and interest  I will pay this late charge promptly but only once on each late payment

(B) Default  If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

(C) Notice of Default  If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

(D) No Waiver by Note Holder  Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(E) Payment of Note Holder's Costs and Expenses  If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses include, for example, reasonable attorneys' fees

**8 GIVING OF NOTICES**  Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address  Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**9 OBLIGATIONS OF PERSONS UNDER THIS NOTE**  If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note  The Note Holder may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

**10 WAIVERS**  I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor  "Presentment" means the right to require the Note Holder to demand payment of amounts due  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

**11 UNIFORM SECURED NOTE**  This Note is a uniform instrument with limited variations in some jurisdictions  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note  That Security Instrument describes how and under what conditions, I may be required to make immediate payment in full of all amounts I owe under this Note  Some of those conditions read as follows

   Transfer of the Property or a Beneficial Interest in Borrower  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law  Lender also shall not exercise this option if  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

   To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

   If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____  (Seal)          _____  (Seal)
ROSELINE Y CHARLES                -Borrower                                           -Borrower

_____  (Seal)          _____  (Seal)
                                  -Borrower                                           -Borrower

*[Sign Original Only]*

Page 2 of 2

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) Single Family—FNMA Form 3520 1/01

Management Systems Development, Inc  (310) 510-3111          Loan Energizer™              LICK_nonst      Copyright (c) 2005-2006

age 3 of 20 Case 16-05108-pwb Doc 1 Filed 05/16/16 Entered 05/16/16 12:48:47 Desc Main
Case 1:14-cv-03598-RWS Document 1-1 Filed 03/22/14 Page 7 of 11
Case 10-73344-jrs Claim 4-1 Document Page 28 of 85 Desc Main Document Page 6 of 10

ANDERSEN, TATE & CARR, PC
1650 SUGARLOAF PARKWAY, SUITE # 800
DULUTH, GA 30097-4915

17-6467H /Charles

Return To

BK 47535PG0169

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY. GA

07 FEB -2 PM 2:00

TOM LAWLER. CLERK

Prepared By
BRANCH BANKING AND TRUST CO

GEORGIA INTANGIBLE TAX PAID
$ 1050.00
TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

──────── [Space Above This Line For Recording Data] ────────

# SECURITY DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21 Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated 02/01/2007 , together with all Riders to this document

(B) "Borrower" is
**ROSELINE Y CHARLES**

Borrower is the grantor under this Security Instrument

(C) "Lender" is **BRANCH BANKING AND TRUST CO**
Lender is a **CORPORATION**
organized and existing under the laws of **GEORGIA**
Lender's address is **1508 KLONDIKE RD SUITE 400 , CONYERS, GA 30094**
Lender is the grantee under this Security Instrument

(D) "Note" means the promissory note signed by Borrower and dated **02/01/2007**
The Note states that Borrower owes Lender
**Three Hundred Forty Nine Thousand Eight Hundred Fifty Dollars and No Cents**
(U S **$349,851 00** ) plus interest Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **02/01/2037**

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

Initials ____ Initials ____ Initials ____ Initials ____

App # 07-0000438

GEORGIA - Single Family- FNMA/FHLMC UNIFORM INSTRUMENT Form 3011 1/01 (Page 1 of 15)

Management Systems Development Inc (310) 516-3111    Lien Enforcer™    8d1_ga_it (revised 12/12/06)    Copyright (c) 2003-2006

0017839
BB&T Confidential

48

Case 16-05108-pwb   Doc 1  Filed 05/16/16   Entered 05/16/16 12:48:47   Desc Main
Case 1:14-cv-03398-RWS   Document 1-1   Filed 10/22/14   Page 8 of 11
Case 10-73344-jrs   Claim 4-1   Filed 05/18/10   Desc Main Document   Page 7 of 10
Document   Page 29 of 85

BK 47535 PG0170

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [X] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | Waiver of Borrower's Rights |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(K) "Escrow Items" means those items that are described in Section 3

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

Initials _____   Initials _____   Initials _____   Initials _____   | App # 07-0000438

GEORGIA - Single Family- FNMA/FHLMC UNIFORM INSTRUMENT  Form 3011 1/01    (Page 2 of 13)

Management Systems Development  Inc  (210) 818 3111          Loan Energizer™          841_ga_8          Copyright (c) 2003-2008

BB&T Confidential

BK 4 7 5 3 5 PG 0 1 7 1

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property

**SEE ATTACHED EXHIBIT "A"**

Parcel ID Number

which currently has the address of  **1944 ACORN LANE, DACULA, GA  30019**

("Property Address")

TO HAVE AND TO HOLD this property unto Lender and Lender's successor and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

1 **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of and interest on the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment

| Initials _ʄℓ_ | Initials _____ | Initials _____ | Initials _____ | App # 07-0000438 |

GEORGIA – Single Family– FNMA/FHLMC UNIFORM INSTRUMENT  Form 3011 1/01        (Page 3 of 16)

Management Systems Development Inc  (310) 519-3111                    Loan Energizer™        &d1_ga_8        Copyright (c) 2003-2004

BB&T Confidential

Case 16-05108-pwb Doc 1 Filed 05/16/16 Entered 05/16/16 12:48:47 Desc Main
Document Page 31 of 85
Case 2:14-cv-03398-RWS Document 1-1 Filed 10/22/14 Page 10 of 11
Case 10-73344-jrs Claim 4-1 Filed 05/18/10 Desc Main Document Page 9 of 10

## BK 47535 PG 0183

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)        _____ (Seal)
ROSELINE Y CHARLES   -Borrower      -Borrower

_____ (Seal)        _____ (Seal)
-Borrower      -Borrower

_____ (Seal)        _____ (Seal)
-Borrower      -Borrower

_____ (Seal)        _____ (Seal)
-Borrower      -Borrower

     _____ (Seal)
     -Borrower

**STATE OF GEORGIA,**     Gwinnett     **County ss**

Signed, sealed and delivered in the presence of

_____
Unofficial Witness

_____
Notary Public, Gwinnett County
State of Georgia

BRIAN C CARMONY
NOTARY
EXPIRES
GEORGIA
NOV 1, 2008
PUBLIC
GWINNETT

Initials _____ Initials _____ Initials _____ Initials _____    App # 07-0000438

GEORGIA - Single Family- FNMA/FHLMC UNIFORM INSTRUMENT Form 3011 1/01    (Page 15 of 15)

Management Systems Development Inc (310) 318 3111    Loan Energizer™    8d1_ga_ft    Copyright (c) 2003-2004

BB&T Confidential

Case 16-05108-pwb Doc 1 Filed 05/16/16 Entered 05/16/16 12:48:47 Desc Main
Document Page 32 of 85
Case 1:14-cv-05398-RWS Document 1-1 Filed 02/22/24 Page 11 of 11
Case 10-73344-jrs Claim 4-1 Filed 05/18/10 Desc Main Document Page 10 of 10

BK47535PG0187

### EXHIBIT "A"
### LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 22 OF THE 7TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 148, BLOCK E, IVEY CHASE, UNIT II, PHASE 2A, AS PER PLAT RECORDED PLAT BOOK 112, PAGES 70 AND 71, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE

BB&T Confidential

# EXHIBIT- B

10

UNITED STATES BANKRUPTCY COURT

Northern District of Georgia (Atlanta)

IN RE:                                                          Case Number: 10-73344

Debtors: Roseline Yolette Charles

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a).
Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the
transfer, other than for security, of the claim referenced in this evidence and notice.

Saxon Mortgage Services, Inc.                    BB&T

Name of Transferee                               Name of Transferor

P.O. Box 161489                                  Court Claim # (if known): 4
Fort Worth, TX 76161                             Amount of Claim: $394890.34
                                                 Date Claim Filed: 05/18/2010

Phone: 800-594-8422
Last Four Digits of Acct #: 8954                 Last Four Digits of Acct #: 8890

Name and Address where transferee payments
should be sent (if different from above):

Saxon Mortgage Services, Inc.
P.O. Box 161489
Fort Worth, TX 76161

Phone: 800-594-8422
Last Four Digits of Acct #: 8954

I declare under penalty of perjury that the information provided in this notice is true and
correct to the best of my knowledge and belief.

By: _____/s/ Bill Taylor_____        Date: September 24, 2010
    Authorized Filing Agent for Filer

Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

ID:4

# EXHIBIT- C

11

51576
00766

**BK51576 PG0766**

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2012 AUG 16 PM 2:08

RICHARD ALEXANDER, CLERK

When Recorded Return To:
Specialized Loan Servicing
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

SLS Loan #: 1005075367
Investor #: 4519951
Investor Code: 01500

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, BRANCH BANKING AND TRUST CO., BY MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, ITS ATTORNEY-IN-FACT, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to FV-I, INC. IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC 1585 BROADWAY, NEW YORK, NY 10036 (729)241-7288, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Security Deed is executed by ROSELINE Y CHARLES to BRANCH BANKING AND TRUST CO. and recorded in Deed Book 47533, Page 169, and/or as Instrument # in the office of the Clerk of the Superior Court of GWINNETT County, Georgia.

In witness whereof, the undersigned has hereunto set its hand on July 25, 2012 (MM/DD/YYYY).

BRANCH BANKING AND TRUST CO., BY MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, ITS ATTORNEY-IN-FACT

By: _____ Vice President

And: _____ Vice President
Kevin A. Borsatino

Witness Demetra Bell

Witness Stephan Freeman

STATE OF Texas COUNTY OF Dallas
The foregoing instrument was acknowledged before me on 7/25/2012 (MM/DD/YYYY), by Aaron Silvious and Kevin Flanagan as Vice President and Vice President respectively for BRANCH BANKING AND TRUST CO. BY MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, ITS ATTORNEY-IN-FACT, who, as such Vice President and Vice President respectively being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Notary Public - State of Texas
Commission expires: 1/6/15

[Notary Seal: YVETTE E ROSINSKI, Notary Public, State of Texas, My Commission Expires January 06, 2015]

Document Prepared by: E.Leano/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
SLSBA 16718796 -@ CJ3991953 FX [C] FRMGA!

*16718796*

0083517 -41

# EXHIBIT- D

12

B 10 (Official Form 10)

| UNITED STATES BANKRUPTCY COURT | FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Roseline Yoletta Charles | Case Number: 12-61983-JRS | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
FV-1, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC

| Name and address where notices should be sent: Specialized Loan Servicing LLC 8742 Lucent Blvd Suite 300 Highlands Ranch, Colorado 80129 Telephone Number: (800) 315-4757    email: | **COURT USE ONLY** ☐ Check this box if this claim amends a previously filed claim. Court Claim Number: _____ *(If Known)* Filed on _____ |
|---|---|

| Name and address where payment should be sent (if different from above): Specialized Loan Servicing LLC Bankruptcy Department 8742 Lucent Blvd Suite 300 Highlands Ranch, Colorado 80129 Telephone Number: (800) 315-4757    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |
|---|---|

**1. Amount of Claim as of Date Case Filed:** _____ $420,033.90

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**    Money Loaned
(See instruction #2)

| **3. Last four digits of any number by which the creditor identifies debtor:** xxxxxx5367 | **3a. Debtor may have scheduled account as:** _____ (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** _____ (See instruction #3b) |
|---|---|---|

| **4. Secured Claim (See instruction #4)** Check the appropriate box if the claim is secured by a lien or property or a right of setoff, attach required redacted documents, and provide the requested information. Nature of Property or right of setoff: ☒ Real Estate ☐ Motor Vehicle ☐ Other Describe: 1944 Acorn Lane, Decatur, Georgia 30019 Value of Property: _____ Annual Interest Rate: 2.0000% ☐ Fixed or ☒ Variable (when case was filed) | **Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $9,719.49 **Basis for perfection:** Recordation of Lien **Amount of Secured Claim:** $420,033.90 **Amount of Unsecured:** _____ |
|---|---|

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family or household use - 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a) (__).

**Amount entitled to priority:**

*Amounts are subject to adjustment on 04/01/2013 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10Form_Ver001 : 4120-N-2550

Case 16-05108-pwb    Doc 1    Filed 05/16/16    Entered 05/16/16 12:48:47    Desc Main
Case 1:14-cv-03398-RWS    Document 1-4    Filed 10/22/14    Page 3 of 5
Case 12-61983-jrs    Claim 5-1    Filed 08/09/12    Desc Main Document    Page 2 of 4

B 10 (Official Form 10) (12/11)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See Instruction #7, and the definition of "redacted.")*

**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor.    ☐ I am a guarantor, surety, indorser, or other
                         (Attach copy of power of attorney, if any.)    (See Bankruptcy Rule 3004.)    codebtor.    (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

| | |
|---|---|
| Print Name: | Craig A. Edelman |
| Title: | Authorized Agent for Specialized Loan Servicing, LLC |
| Company: | Brice, Vander Linden & Wernick, PC |

/s/ Craig A. Edelman
Signature

Address and telephone number (if different from notice address above):
    P. O. Box 829009
    Dallas, TX 75382-9909

08/03/2012
Date

Telephone:    (972) 643-6600    Email:    poeinquiries@bkrnylaw.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

B10Form_Ver001 : 4120-N-2550

Case 16-05108-pwb   Doc 1   Filed 05/16/16   Entered 05/16/16 12:48:47   Desc Main
Case 1:14-cv-03598-RWS   Document 1-4   Filed 10/22/14   Page 4 of 5
Document   Page 40 of 85
Case 12-61983-jrs   Claim 5-1   Filed 08/09/12   Desc Main Document   Page 3 of 4

B 10 (Attachment A) (12/11)
Chapter: 13

FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
Judge: James R. Sacca        Trustee: Adam M. Goodman

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| Name of debtor: | Roseline Yoletta Charles | Case Number: | 12-61983-JRS |
| Name of creditor: | FV-I, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC | Last four digits of any number you identify the debtor's account: | xxxxxx5367 |

### Part 1: Statement of Principal and Interest Due as of the Petition Date (05/08/2012)

Itemize the principal and interest due on the claim as of the petition date (include in the Amount of Claim listed in item 1 of your Proof of Claim form).

1. Principal due                                                                              (1)   $229,897.10

2. Interest due

| Interest Rate | From | To | Amount |
|---|---|---|---|
| 2.000% | 12/01/2011 | 05/08/2012 | $2,015.82 |

Total interest due as of the Petition date $2,015.82        Copy total here >   (2)   + $2,015.82

3. Total principal and interest due                                                          (3)   $231,912.92

### Part 2: Statement of Pre-Petition Fees, Expenses and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (include in the Amount of Claim listed in item 1 on the Proof of Claim form).

| Description | | Dates Incurred | Amount | |
|---|---|---|---|---|
| 1. Late Charges | | 1 @ $35.19 incurred on 03/16/12<br>1 @ $35.19 incurred on 04/16/12 | (1) | $70.38 |
| 2. Non-sufficient funds (NSF) fees | | | (2) | |
| 3. Attorney fees | | | (3) | |
| 4. Filing fees and court costs | | | (4) | |
| 5. Advertisement costs | | | (5) | |
| 6. Sheriff/auctioneer fees | | | (6) | |
| 7. Title costs | | | (7) | |
| 8. Recording fees | | | (8) | |
| 9. Appraisal/broker's price opinion fees | AVM fee | 1 @ $47.20 incurred on 10/08/10<br>1 @ $110.00 incurred on 05/25/11<br>1 @ $3.73 incurred on 12/14/11<br>1 @ $115.00 incurred on 04/20/12 | (9) | $275.93 |
| 10. Property inspection fees | | 1 @ $11.35 incurred on 03/09/12<br>1 @ $11.35 incurred on 04/11/12 | (10) | $22.70 |
| 11. Tax advances (non-escrow) | | | (11) | |
| 12. Insurance advances (non-escrow) | | | (12) | |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | | (13) | $2,180.55 |
| 14. Property preservation expenses. | | | (14) | |
| 15. Other: | | | (15) | |
| 16. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | | (16) | $2,549.56 |

Case 16-05108-pwb Doc 1-4 Filed 05/16/16 Entered 05/16/16 12:48:47 Desc Main
Case 1:14-cv-03898-RWS Document 1-4 Filed 12/22/14 Page 5 of 5 Desc Main
Case 12-61983-jrs Claim 5-1 Filed 08/09/12 Desc Main Document Page 4 of 4

B 10 (Attachment A) (12/11)
Chapter: 13

FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
Judge: James R. Sacca    Trustee: Adam M. Goodman

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable non-bankruptcy law.

| | | | | | |
|---|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | 03/23/2012 | | |
| | | Number of installment payments due: | (1) **5** | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2. | **Amount of installment payments due** | | | | | |
| | January 2012 to February 2012 | 2 installments @ $1,397.47 = | | $2,794.94 | | |
| | March 2012 to May 2012 | 3 installments @ $1,458.33 = | | $4,374.99 | | |
| | | Total installment payments due as of the prepetition date | $7,169.93 | Copy total here | > (2) | $7,169.93 |
| 3. | **Calculation of cure amount** | Add total prepetition fees, expenses, and charges | | Copy total here Part 2 | > | + $2,549.56 |
| | | Subtract total of unapplied funds (funds received but not credited to account) | | | | $0.00 |
| | | Subtract amounts for which debtor is entitled to a refund | | | | _____ |
| | | Total amount necessary to cure default as of the petition date | | | (3) | $9,719.49 |

Copy total onto item 4 of Proof of Claim form

Your monthly payment amount may change due to an escrow requirement and/or interest rate adjustment. Your current payment amount and any upcoming changes are provided below:

| Effective Date | Effective Amount |
|---|---|
| 06/01/2012 | $1,374.15 |

# EXHIBIT- E

13

**K52136 N0305**

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2013 APR -5 PM 2:00

RICHARD ALEXANDER, CLERK

Power of Attorney to be recorded
simultaneously herein

*The purpose of this corrective assignment is to modify the assignee of the previous assignment.
Cross-index to Assignment recorded on 3.16.12 in Deed Book 51576, Page 766, Gwinnett County,
Georgia Records

File No · 594113-FT3
Debtor: Roseline Y Clarks

Return To Promenic Solutions, LLC
1544 Old Alabama Road
Roswell, GA 30076

CORRECTIVE ASSIGNMENT

STATE OF Texas
COUNTY OF Dallas

For value received, Branch Banking and Trust Company has this day transferred, sold, assigned, conveyed
and set over to FV-I, Inc. as trustee for Morgan Stanley Mortgage Capital Holdings LLC, whose address is 1585
Broadway, New York, NY 10036, as Assignee, its successors, representatives and assigns, all its
right, title and interest in and to a certain Security Deed (or Deed to Secure Debt) executed by Roseline Y. Clarks
to Branch Banking and Trust Company, dated February 1, 2007, recorded in Deed Book 47535, Page 169, Gwinnett
County, Georgia Records

Property Address: 1944 Acorn Lane, Dacula, GA 30019
The Assignor herein specifically transfers, sells, conveys and assigns to the above Assignee, its successors,
representatives and assigns, the aforesaid Security Deed, the property described therein, together with all the powers,
options, privileges and immunities therein contained

IN WITNESS WHEREOF, the Assignor has hereunto set its hand and seal this March 5, 2013

Signed, sealed and delivered
in the presence of:

Unofficial Witness

Notary Public
My Commission Expires 1/6/2015

BRANCH BANKING AND TRUST COMPANY by
Morgan Stanley Mortgage Capital Holdings LLC
Its Attorney-in-Fact

By:
Printed Name:
Title: Vice President

By:
Printed Name:
Title: Vice President
(Corporate Seal)

IVETTE F. ROMERO
Notary Public, State of Texas
My Commission Expires
January 06, 2015

Q037446

File No 594113

# EXHIBIT- F

14

BK 4 7 5 3 5 P G 0 1 6 8

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY. GA

07 FEB -2 PM 2:00

TOM LAWLER, CLERK

ANDERSEN, TATE & CARR, P.C.
6650 SUGARLOAF PARKWAY, SUITE 600, DULUTH, GEORGIA 30097
File No. 17-6467H/CHARLES

PT-61 #*062-2007-003698*

GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$ *349.90*
TOM LAWLER CLERK OF
SUPERIOR COURT

## W A R R A N T Y  D E E D

**STATE OF GEORGIA**

**COUNTY OF GWINNETT**

**This indenture** made this **1st** day of **February, 2007,** between **RISING HOMES, INC., , a Georgia Corporation** as party or parties of the first part, hereinunder called Grantor, and **ROSELINE Y. CHARLES** as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

### W I T N E S S E T H:

That Grantor, for and in consideration of the sum of **TEN AND 00/100'S ($10.00) Dollars** and other good and valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee,

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 22 OF THE 7TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 148, BLOCK E, IVEY CHASE, UNIT II, PHASE 2A, AS PER PLAT RECORDED PLAT BOOK 112, PAGES 70 AND 71, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.**

**THIS CONVEYANCE IS MADE SUBJECT TO ALL ZONING, GENERAL UTILITY, SEWER AND DRAINAGE EASEMENTS AND RESTRICTIONS OF RECORD AFFECTING SAID PREMISES.**

**TO HAVE AND TO HOLD** the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in **FEE SIMPLE.**

**AND THE SAID** Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

**IN WITNESS WHEREOF,** Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

Witness:

Notary Public:

RISING HOMES, INC.
a Georgia corporation

By: _____

JOSEPH W. ACKERMAN, JR., PRESIDENT

[CORPORATE SEAL]

BRIAN C. CARTON
NOTARY
EXPIRES
GEORGIA
NOV. 5, 2008

0017838

# EXHIBIT- G

19



# EXHIBIT- H

20

LAW OFFICES

# MCCALLA RAYMER, LLC

1544 OLD ALABAMA ROAD
ROSWELL, GEORGIA 30076

TELEPHONE (770) 643-2148
TELEFAX: (770) 643-4062
1-800-845-8633
September 5, 2014

Roseline Y. Charles
1944 Acorn Lane
Dacula, GA 30019

Our File #:        594113
Loan #:           7600031743
Property Address:   1944 Acorn Lane
                    Dacula, GA 30019

Dear Borrower:

**EXCEPT AS MAY BE NOTED HEREIN, THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

The above-referenced loan has been referred to this law firm for handling.

As of the date of this letter, the amount of debt is $443,575.29. Because additional interest, late charges and other charges may accrue, the amount to reinstate or pay off your loan changes daily. Please call our office for complete reinstatement or payoff figures.

The debt is owed to RUSHMORE LOAN MANAGEMENT SERVICES, LLC, who is authorized to receive payment on your loan, but who may not be the recorded holder of the Security Deed.

Be advised that unless you dispute the validity of the debt or any portion thereof within thirty days after receipt of this notice, we will assume that the debt is valid. If you notify us in writing at the above address within the thirty-day period that the debt, or any portion thereof is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you. Also, upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

Please be advised that if you have previously received a discharge in a Chapter 7 bankruptcy case, your personal liability on this loan may have been extinguished. In that event, the action we have been requested to take would be limited to the foreclosure of the above-referenced property. If you are currently under bankruptcy protection and no relief has been granted to your lender, please fax your bankruptcy case information to us at (888) 371-4980. We may be able to close our file immediately.

This law firm is seeking solely to foreclose the creditor's lien on real estate and will not be seeking a personal money judgment against you on its own behalf, which will not affect the creditor's right to do so as allowed by law.

Sincerely,

McCalla Raymer, LLC*

By:

**DONALD R. HICKS**

*Licensed in Georgia

# EXHIBIT-I

PREPARED BY: RLMS
WHEN RECORDED, RETURN TO
RUSHMORE LOAN MANAGEMENT SERVICES LLC
15480 LAGUNA CANYON ROAD, SUITE 100
IRVINE CA 92618

BK54004 PG0081

RECORDING REQUESTED BY
RUSHMORE LOAN MANAGEMENT SERVICES LLC

**ASSIGNMENT OF SECURITY DEED**

LOAN # 7600031743

McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, GA 30076
ATTN: RECORDING TEAM

FOR VALUABLE CONSIDERATION:
ASSIGNOR:                   FV-I, INC. AS TRUSTEE FOR MORGAN STANLEY MORTGAGE
                           CAPITAL HOLDINGS LLC
ASSIGNOR ADDRESS:          1585 BROADWAY, NEW YORK, NY 10036

HEREBY GRANTS, ASSIGNS AND TRANSFERS TO:
ASSIGNEE:                   CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND
                           SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN
                           TRUST, SERIES 2013-7

ASSIGNEE ADDRESS:          500 DELAWARE AVENUE 11TH FLOOR, WILMINGTON, DE 19801

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN SECURITY DEED:
DATED                       02/01/2007
ORIGINAL LOAN AMOUNT:       $349,851.00
GRANTOR/BORROWER:           ROSELINE Y. CHARLES
ORIGINAL BENEFICIARY:       BRANCH BANKING AND TRUST CO.

RECORDED IN THE OFFICIAL REAL PROPERTY RECORDS OF GWINNETT COUNTY, GEORGIA
RECORDED: 02/02/2007 BOOK/VOLUME/LIBER: 47535 PAGE: 0169 DOCUMENT. 0017839

PROPERTY SUBJECT TO LIEN    1944 ACORN LANE, DACULA, GA 30019

TOGETHER WITH THE PROMISSORY NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY
DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER
SAID SECURITY DEED.

FV-I, INC. AS TRUSTEE FOR MORGAN STANLEY MORTGAGE
CAPITAL HOLDINGS LLC

WITNESS:

_Demetra Bell_
Demetra Bell

BY: _____
NAME:          Aaron Saunders
TITLE:         Authorized Signatory

BY: _____
NAME:          Kevin A Flanagan
TITLE:         Authorized Signatory

WITNESS:

_Sean McCormack_
Sean McCormack

*see attached as exhibit A*

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA
2013 DEC 21 PM 2:00
RICHARD ALEXANDER, CLERK

01,12486-87

GA 04/13
SA4113

BK54004 PG0082

## JURAT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of Texas
County of Dallas

Subscribed and sworn to (or affirmed) before me on this _8_ day of December , 2015 by Aaron Saunders and Kevin A Flanagan , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me

Signature: Roseli Mesquita

> **Roseli Mesquita**
> Notary Public,
> State of Texas
> Expires: 08/05/2019

(This area for notary stamp)

EXHIBIT-J

# ADJUSTABLE RATE NOTE

Loan #: 07-0000438

**(LIBOR Six-Month Index (As Published in The Wall Street Journal) – Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| 02/01/2007 | DULUTH | GA |
|---|---|---|
| [Date] | [City] | [State] |

1944 ACORN LANE, DACULA, GA 30019
[Property Address]

**1. BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay U.S. $349,851.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
BRANCH BANKING AND TRUST CO.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender, or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  9.250% . The interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default as described in Section 7(B) of this Note.

**3. PAYMENTS.**
**(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month. I will make my monthly payments on the   first   day of each month beginning on   03/01/2007   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  02/01/2037 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 1506 KLONDIKE RD  SUITE 400, CONYERS, GA 30094,
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments.** Each of my initial monthly payments will be in the amount of U.S. $2,878.14
This amount may change.

**(C) Monthly Payment Changes.** Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES.**
**(A) Change Dates.** The interest rate I will pay may change on the first day of  February, 2010  and on that day every   6   months thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index.** Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.** Before each Change Date, the Note Holder will calculate my new interest rate by adding  6.250 percentage point(s) ( 6.250% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.** The interest rate I am required to pay at the first Change Date will not be greater than  12.250%  or less than  9.250% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  1.000  percentage point(s) ( 1.000% ) from the rate of interest I have been paying for the preceding  6   months. My interest rate will never be greater than  15.250%

**(E) Effective Date of Changes.** My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes.** The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Page 1 of 2

**7. BORROWER'S FAILURE TO PAY AS REQUIRED.**

**(A) Late Charges for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.8%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different  address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS.**  I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment"  means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions, I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
>
> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
>
> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)       _____ (Seal)
ROSELINE Y. CHARLES                       -Borrower                                              -Borrower


_____ (Seal)       _____ (Seal)
                                          -Borrower                                              -Borrower


                                                                                    *[Sign Original Only]*

Page 2 of 2

# LIBOR 5/6, 2/6, 3/6, 2/28 AND 3/27 ADJUSTABLE RATE DISCLOSURE

This disclosure describes the features of the Adjustable Rate Mortgage (ARM) program you are considering. Information on other ARM programs is available upon request.

This loan program has an adjustable rate feature. This means that your interest rate and payment amount can change.

## HOW YOUR INTEREST RATE AND PAYMENT ARE DETERMINED

- After the initial two years (for the 2/6 and 2/28 program) or three years (for the 3/6 and 3/27 program) or five years (for the 5/6 program) of your loan, your interest rate will be based on an index plus a margin, rounded to the nearest 0.125%.
- The interest rate will be based on the average of interbank offered rates for six month U.S. dollar denominated deposits in the London market based on quotations of major banks ("Libor") plus our margin, rounded to the nearest 0.125%. Ask us for our current interest rate and margin.
- Information about the index is published in the Wall Street Journal.
- The initial interest rate is not based on the index used to make later adjustments. Ask us for the amount of the current interest rate premium or discount.
- Your interest rate will equal the index rate plus margin, rounded to the nearest 0.125%, unless rate "caps" limit the amount of change in the interest rate.
- During the first two years (for the 2/6 and 2/28 program) or three years (for the 3/6 and 3/27 program) or five years (for the 5/6 program) of your loan, your payment will be based on the interest rate and loan balance. After the first two years (for the 2/6 and 2/28 program) or three years (for the 3/6 and 3/27 program) or five years (for the 5/6 program) of your loan, your monthly payment will be based on your interest rate, loan balance, and remaining loan term.

## HOW YOUR INTEREST RATE CAN CHANGE

|  | 5/6 LIBOR ARM | 2/6 LIBOR ARM | 3/6 LIBOR ARM | 2/28 LIBOR ARM | 3/27 LIBOR ARM |
|---|---|---|---|---|---|
| Your interest rate can change: | After fives years and semi-annually thereafter. | After two years and semi-annually thereafter. | After three years and semi-annually thereafter. | After two years and semi-annually thereafter. | After three years and semi-annually thereafter. |
| Each time your interest rate changes, the new interest rate will equal the sum of the index plus the margin, subject to the following limits; | On the first adjustment, your interest rate will not increase or decrease by more than 5 percentage points. | On the first adjustment, your interest rate will not increase or decrease by more than 3 percentage points. | On the first adjustment, your interest rate will not increase or decrease by more than 2 percentage points. | On the first adjustment, your interest rate cannot increase by more than 3 percentage points. | On the first adjustment, your interest rate cannot increase by more than 3 percentage points. |
|  | On each subsequent adjustment, your interest rate may not increase or decrease by more than 1 percentage point. | On each subsequent adjustment, your interest rate may not increase or decrease by more than 1 percentage point. | On each subsequent adjustment, your interest rate may not increase or decrease by more than 1 percentage point. | On each subsequent adjustment, your interest rate may not increase or decrease by more than 1 percentage point. | On each subsequent adjustment, your interest rate may not increase or decrease by more than 1 percentage point. |
|  | Your interest rate cannot increase or decrease by more than 5 percentage points over the term of the loan. | Your interest rate cannot increase or decrease by more than 5 percentage points over the term of the loan. | Your interest rate cannot increase or decrease by more than 6 percentage points over the term of the loan. | Your interest rate cannot increase more than 6 percentage points over the life of the loan. | Your interest rate cannot increase more than 6 percentage points over the life of the loan. |

## HOW YOUR PAYMENT CAN CHANGE

Your payment can change semiannually after remaining fixed for 2 years (for the 2/6 and 2/28 programs), 3 years (for the 3/6 and 3/27 programs), or 5 years (for the 5/6 program).

Your monthly payment may increase or decrease substantially based on the changes in the interest rate.

You will be notified in writing at least 25 days but not more than 120 days before the due date of a payment at a new level. This notice will contain information about your interest rates, payment amount and loan balance.

### INTEREST RATE AND PAYMENT CHANGE EXAMPLES

|  | The examples below illustrate rate and payment changes based on a $10,000, 30-year loan using an initial interest rate in effect July 1, 2006. | | | | |
| --- | --- | --- | --- | --- | --- |
|  | 5/6 LIBOR ARM | 2/6 LIBOR ARM | 3/6 LIBOR ARM | 2/28 LIBOR ARM | 3/27 LIBOR ARM |
| Initial interest rate | 7.50% | 7.625% | 7.75% | 9.00% | 9.00% |
| Maximum interest rate | 12.50% | 12.625% | 13.75% | 15.00% | 15.00% |
| First year payment | $69.92 | $70.78 | $71.64 | $80.46 | $80.46 |
| Maximum payment | $103.17 | $106.25 | $113.60 | $124.89 | $124.14 |
| Month of maximum payment | 61st month | 37th month | 61st month | 43rd month | 55th month |

To see what your payments would be, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. For example using the 5/6 program example, the initial monthly payment for a mortgage amount of $60,000 would be $60,000/$10,000 =6; 6x $69.92 ≈ $419.52.

**This is not a commitment to make a loan. You hereby acknowledge receipt of this ARM Program Disclosure and a copy of the Consumer Handbook on Adjustable Rate Mortgages on today's date.**

_____      2/1/07      _____
Borrower                              Date        Borrower                     Date
**ROSELINE Y. CHARLES**

Management Systems Development, Inc.  (310) 427-7516        *Loan Energizer*™        &libbradj        Copyright (c) 2005-2006

# PREPAYMENT PENALTY RIDER

This Prepayment Penalty Rider is made on the 1st   day of February, 2007   , and is incorporated into and made a part and shall be deemed to amend and supplement the Promissory Note of even date herewith (the "Note"), made by the undersigned borrower(s) in favor of
**BRANCH BANKING AND TRUST CO.**                                                                 the Lender.

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements in the Note, Borrower and Lender further covenant and agree as follows (despite anything stated to the contrary which is contained in the Note).

**BORROWER'S RIGHTS TO PREPAY:** After_____2_____ full years from the date hereof, I may prepay in whole or in part without penalty, the then outstanding principal balance. In the event I prepay any portion of the outstanding principal balance during the first ___2___ years from the date hereof, I shall pay in addition to such prepayment (or, as a deduction therefrom) a penalty in an amount equal to___1___ percent of the principal portion of the amount so prepaid. Holder shall apply any prepayment first to reduce any interest and charges owing at the time of such prepayment and then to reduce the amount of principal owed under this Note. If I make a partial prepayment, there will be no changes in the due dates or in the amount of my monthly payments unless the Note Holder agrees in writing to those changes.

### WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (seal)          _____ (seal)
**ROSELINE Y. CHARLES**

_____ (seal)          _____ (seal)

                                                 _____ (seal)

ANDERSEN, TATE & CARR, P.C.
1950 SUGARLOAF PARKWAY, SUITE # 800
DULUTH, GA 30097-4915

17-6467H /Charles

Return To:

BK 4 7 5 3 5 PG 0 1 6 9

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

07 FEB -2  PM 2: 00

TOM LAWLER, CLERK

Prepared By:
BRANCH BANKING AND TRUST CO.

GEORGIA INTANGIBLE TAX PAID

$ _1050.00_

TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

------------------ [Space Above This Line For Recording Data] ------------------

# SECURITY DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated 02/01/2007 , together with all Riders to this document.

(B) "Borrower" is
ROSELINE Y. CHARLES

Borrower is the grantor under this Security Instrument.

(C) "Lender" is  BRANCH BANKING AND TRUST CO.,
Lender is a CORPORATION
organized and existing under the laws of  GEORGIA.
Lender's address is 1506 KLONDIKE RD  SUITE 400 , CONYERS, GA 30094.
Lender is the grantee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated 02/01/2007 .
The Note states that Borrower owes Lender
Three Hundred Forty Nine Thousand Eight Hundred Fifty One Dollars and No Cents
(U.S. $349,851.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 02/01/2037  .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

Initials: _____   Initials:_____   Initials:_____   Initials:_____   App # 07-0000438

GEORGIA - Single Family- FNMA/FHLMC UNIFORM INSTRUMENT  Form 3011 1/01          (Page 1 of 15)

Management Systems Development, Inc.  (310) 519-3111      Loan Energizer™      &d1_ga_it (revised 12/12/06)    Copyright (c) 2003-2006

0017839

BK 4 7535 PG 0 1 7 0

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [X] Planned Unit Development Rider  [X] Other(s) [specify]
[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider    <u>Waiver of Borrower's Rights</u>

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _PL_    Initials:_____    Initials:_____    Initials:_____    | App # 07-0000438 |

BK 4 7 5 3 5 PG 0 1 7 1

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property:

**SEE ATTACHED EXHIBIT "A"**

Parcel ID Number:

which currently has the address of  **1944 ACORN LANE, DACULA, GA  30019**

("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successor and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of and interest on the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment

BK47535PG0172

is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes, assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

| Initials: _KC_ | Initials: _____ | Initials: _____ | Initials: _____ | App # 07-0000438 |

BK 47535 PG 0173

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Initials: _LC_    Initials: _____    Initials: _____    Initials: _____    | App # 07-0000438 |

BK 4 7 5 3 5 PG 0 1 7 4

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

BK 4 7 5 3 5 PG 0 I 7 5

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing

BK 4753 5PG0176

the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be require loss reserve payments if Mortgage Insurance coverage required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Initials: _BC_   Initials:_____   Initials:_____   Initials:_____

App # 07-0000438

GEORGIA - Single Family- FNMA/FHLMC UNIFORM INSTRUMENT  Form 3011 1/01   (Page 8 of 15)

Management Systems Development, Inc. (310) 519-3111   Loan Energizer™   &d1_ga_lt   Copyright (c) 2003-2004

As a result of these agreements, Lender, any purchaser of the Note, another Insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

Initials: _L C_    Initials: _____    Initials: _____    Initials: _____    | App # 07-0060438 |

GEORGIA - Single Family- FNMA/FHLMC UNIFORM INSTRUMENT  Form 3011 1/01    (Page 9 of 15)

BK 7535 PG 0178

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Initials: _RC_    Initials: _____    Initials: _____    Initials: _____    | App # 07-0000438 |

BK 47535 PG 0179

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials: _RC_    Initials: _____    Initials: _____    Initials: _____    | App # 07-0000438 |

BK 4 7 5 3 5 PG 0 1 8 0

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.**   If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Initials: _____    Initials:_____    Initials:_____    Initials:_____    | App # 07-0000438 |

Management Systems Development, Inc.  (310) 519-3111    Loan Energizer™    3d1_ga_R    Copyright (c) 2003-2004

BK 4 7 5 3 5 PG 0 1 8 2

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fee; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release.    Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead.    Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation.    Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed.    This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

THIS SPACE INTENTIONALLY LEFT BLANK

Initials: _____    Initials: _____    Initials: _____    Initials: _____    | App # 07-0000438 |

BK 47535 PG 0183

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)                    _____ (Seal)
ROSELINE Y. CHARLES    -Borrower                                        -Borrower

_____ (Seal)                    _____ (Seal)
                       -Borrower                                        -Borrower

_____ (Seal)                    _____ (Seal)
                       -Borrower                                        -Borrower

_____ (Seal)                    _____ (Seal)
                       -Borrower                                        -Borrower

                                                  _____ (Seal)
                                                                         -Borrower


STATE OF GEORGIA,                  Gwinnett                County ss:

Signed, sealed and delivered in the presence of:


                                              _____
                                              Unofficial Witness


                                              _____
                                              Notary Public, Gwinnett County
                                              State of Georgia


Initials: _____    Initials: _____    Initials: _____    Initials: _____         App # 07-6000438

GEORGIA - Single Family- FNMA/FHLMC UNIFORM INSTRUMENT  Form 3011 1/01                    (Page 15 of 15)

Management Systems Development, Inc. (310) 519-3111          Loan Energizer!™          6d1_ga_ft          Copyright (c) 2003-2004

BK4753 5PG0184

## ADJUSTABLE RATE RIDER

Loan No. 07-0000438

### (LIBOR Six-Month Index (As Published in The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this  1st  day of **February, 2007**  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
**BRANCH BANKING AND TRUST CO. ,**
("Lender") of the same date and covering the property described in the Security Instrument and located at:

**1944 ACORN LANE, DACULA, GA 30019.**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES.

The Note provides for an initial interest rate of **9.250%** . The Note  provides  for changes  in the interest rate and the monthly payments, as follows:

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES.

**(A) Change Dates.** The interest rate I will pay may change on the first day of    **February, 2010**    , and  on  that  day every  6   month thereafter. Each date on which my interest rate could change is called the "Change Date."

**(B) The Index.** Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure  available  as of the first  business day of  the month  immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.** Before each Change Date, the Note Holder will calculate my new interest rate by adding **6.250**  percentage point(s) ( **6.250%** ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected  to owe at the  Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.** The interest rate I am required to pay at the first Change Date will not be greater than **12.250%** or less than **9.250%** . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **1.000** percentage point(s) ( **1.000%** ) from the  rate of interest I have been paying for the preceding  6   month(s). My interest rate will never be greater than **15.250%** .

**(E) Effective Date of Changes.** My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes.** The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Page 1 of 2

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) Single Family--FNMA--Form 3138 1/01

BK 4753 5PG 0185

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (seal)                    _____ (seal)
ROSELINE Y. CHARLES        Borrower                                            Borrower

_____ (seal)                    _____ (seal)
                           Borrower                                            Borrower

                                                    _____ (seal)
                                                                               Borrower

Page 2 of 2

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL) Single Family–FNMA–Form 3138 1/01

Management Systems Development, Inc. (310) 519-3111        Loan Energizer℠        &adjrate2        Copyright (c) 2005-2006

## PLANNED UNIT DEVELOPMENT RIDER

```
BRANCH BANKING AND TRUST CO.

1596 KLONDIKE RD  SUITE 400
CONYERS, GA 30094
```

App No. 07-0000438                                                                02/01/2007

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    02/01/2007    , and is incorporated
into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

**BRANCH BANKING AND TRUST CO.**

(the  "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1944 ACORN LANE, DACULA, GA 30019
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in recorded covenants and restrictions
AS RECORDED IN DEED BOOK 36199, PAGE 231, GWINNETT COUNTY, GEORGIA RECORDS; IN DEED BOOK 44910,
PAGE 71, AFORESAID RECORDS; AND, AS AMENDED
(the "Declaration").

The Property is a part of a planned unit development known as

**IVEY CHASE**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest.

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.**  Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation,
trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other
rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments
imposed pursuant to the Constituent Documents.

**B. Property Insurance.**  So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which
provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire,
hazards included within the term "extended coverage," and any other hazards, including, but not limited to,
earthquakes and floods, for which Lender requires insurance, then:

(i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of
the yearly premium installments for property insurance on the Property; and

(ii)  Borrower's obligation under Section 5 to maintain property insurance coverage
on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association
policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided
by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a
loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby
assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security
Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that
the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of
coverage to Lender.

**D. Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, payable
to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common
areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be
paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as
provided in Section 11.

**E. Lender's Prior Consent.**  Borrower shall not, except after notice to Lender and with Lender's prior
written consent, either partition or subdivide the Property or consent to:

(i)  the abandonment or termination of the PUD, except for abandonment or
termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking
by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the
provision is for the express benefit of Lender;

(iii)  termination of professional management and assumption of self-management of
the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability
coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.**  If Borrower does not pay PUD dues and assessments when due, then Lender may pay
them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower
secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts
shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice
from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms
and provisions contained in this PUD Rider:

X _____ (seal)    X _____ (seal)
    ROSELINE Y. CHARLES

X _____ (seal)    X _____ (seal)

                                    X _____ (seal)

MULTISTATE PUD RIDER - Single Family - FNMA/FHLMC Uniform Instrument - Form 3150 (1/01)
Management Systems Development, Inc.  (310) 427-7516    Loan Energizer™  &Riderpu3(rev. 12/12/06)   Copyright (c) 2003-2004

BK 47535 PG 0187

## EXHIBIT "A"
## LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 22
OF THE 7TH DISTRICT, GWINNETT COUNTY, GEORGIA, BEING LOT 149,
BLOCK E, IVEY CHASE, UNIT II, PHASE 2A, AS PER PLAT RECORDED PLAT
BOOK 112, PAGES 70 AND 71, GWINNETT COUNTY, GEORGIA RECORDS,
WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY
REFERENCE.

BK 4 7535 PG 0 1 8 8

GEORGIA -

GRANTOR: ROSELINE Y. CHARLES

LENDER:    BRANCH BANKING AND TRUST CO.

DATE OF SECURITY DEED: 02/01/2007

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE LAWS OF THE UNITED STATES OR ANY AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____    _____ (Seal)
                                    ROSELINE Y. CHARLES          -Grantor

_____    _____ (Seal)
                                                                 -Grantor

_____    _____ (Seal)
                                                                 -Grantor

_____    _____ (Seal)
                                                                 -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s) it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____          _____
              Notary Public                              Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_____          _____
ROSELINE Y. CHARLES

_____          _____

_____          _____

Management Systems Development, Inc. (310) 427-7516    Loan Energizer™    &ga_waivr(rev. 12/27/06)    Copyright (c) 2003-2004

*HERE IT IS...*
To get this to you promptly, I am mailing the enclosed
without a formal letter.

8/7/07

This Security Deed was sent to
Greenville, SC in error

**ANDERSEN | TATE | CARR**
P.O. BOX 2000
LAWRENCEVILLE, GA 30046
9855 SUGARLOAF PARKWAY, SUITE 360
DULUTH, GA 30097
(770) 822-0900
FACSIMILE (770) 822-9144

# EXHIBIT-K

93:4 2100 1170 0960 0315 19

CERTIFIED COPY

LAW OFFICES
## MCCALLA RAYMER, LLC
1544 OLD ALABAMA ROAD
ROSWELL, GEORGIA 30076

TELEPHONE (770) 643-2148
TELEFAX: (770) 643-4062
1-800-845-8633
March 24, 2016

Roseline Y. Charles
1944 Acorn Ln
Dacula, GA 30019

RE:   NOTICE OF FORECLOSURE SALE - Security Deed - Christiana Trust, A Division of
Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series
2013-7 vs. Roseline Y. Charles

Servicing Lender's #:            760003 1743
Our File #:                      594113-FT18
Original Borrower:               Roseline Y. Charles
Current Borrower:                Roseline Y. Charles
Property:                        1944 Acorn Lane
                                 Dacula, Georgia 30019
                                 Gwinnett County, Georgia

PMI Certificate No.:

Dear Borrower:

By letter dated January 26, 2016 (the "Initial Communication Letter") we notified you that the
above-referenced loan had been referred to this law firm for handling. That letter also advised you of
certain rights (the "Borrowers Rights"- which include your right to validate the debt) you could exercise
within 30 days of your receipt of the Initial Communication Letter. Nothing in this letter will prevent you
from exercising the Borrower's Rights as explained in the Initial Communication Letter.

Please be advised that if you are not obligated on this loan, or if you have received a discharge in
a bankruptcy case where your personal liability on this loan was extinguished, then any action we take
would be limited to the foreclosure of the above referenced property. If you are currently under
bankruptcy protection, please fax your bankruptcy case information to us at (888) 371-4980.

The entire amount of the outstanding balance of principal and interest owed on the loan and any
other authorized charges are now due and payable. Additionally, the terms of your note call for the
addition of attorneys' fees to the debt in case of collection by or through an attorney. Georgia law



**THIS IS AN ATTEMPT TO COLLECT A DEBT.     ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.**

(O.C.G.A. Section 13-1-11) requires that you be allowed ten (10) days from your receipt of this letter to pay the entire amount owed without having to pay attorneys' fees. After that time the full attorneys' fees allowed by Georgia law may be added to the debt.

Enclosed is a copy of the Notice of Sale submitted for publication in the legal newspaper. Note that the sale is scheduled for the first Tuesday in May, 2016, and will be held within the legal hours of sale at the Gwinnett County Courthouse.

Please be advised that if the default is not cured and the property is sold at foreclosure to an outside investor (other than your lender), there may be excess proceeds from the sale for distribution to lienholders and/or the owner of record. Neither lienholders nor owners have to sign any contracts or pay any fees to outside agencies to recover these funds! If an outside investor contacts you after foreclosure advising they have purchased your property at sale, please call our Excess Proceeds department between 45 - 60 days after the foreclosure sale to determine if any such funds exist.

For further information regarding this foreclosure, you may call our office at (770) 643-2148, and ask for Team FT18. The lender may be able to allow you to reinstate the loan and stop the foreclosure. You may call our office to find out if reinstatement is allowed; and if allowed, to find out the amount of money which you must pay in order to cure the default. If you reinstate your loan, payment must be made through our office in the form of certified funds or cashier's check.

When telephoning this office please identify yourself as the borrower, and refer to our file number.

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-7 holds the Security Deed to your property and Rushmore Loan Management Services, LLC services your loan. The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, as servicer is:

Rushmore Loan Management Services, LLC
7515 Irvine Center Drive 1st Floor
Irvine, CA 92618
888-504-7300

Please note that this letter is being sent to you in order to comply with Georgia statutory foreclosure law requirements. Nothing in this letter should be considered as preventing you from exercising the Borrower's Rights as explained in the Initial Communications Letter dated January 26, 2016.

Sincerely,

McCalla Raymer, LLC

/ca   5/3/16
Enclosure

THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**CERTIFIED COPY**

NOTICE OF SALE UNDER POWER

NOTICE OF SALE UNDER POWER

GEORGIA, GWINNETT COUNTY
**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.**

Under and by virtue of the Power of Sale contained in a Security Deed given by Roseline Y. Charles
to Branch Banking and Trust Company, dated February 1, 2007, recorded in Deed Book 47535, Page 169,
Gwinnett County, Georgia Records, as last transferred to Christiana Trust, A Division of Wilmington Savings
Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2013-7 by assignment recorded in
Deed Book 54004, Page 81, Gwinnett County, Georgia Records, conveying the after-described property to
secure a Note in the original principal amount of THREE HUNDRED FORTY-NINE THOUSAND EIGHT
HUNDRED FIFTY-ONE AND 0/100 DOLLARS ($349,851.00), with interest thereon as set forth therein,
there will be sold at public outcry to the highest bidder for cash before the courthouse door of Gwinnett
County, Georgia, or at such place as may be lawfully designated as an alternative, within the legal hours of
sale on the first Tuesday in May, 2016, the following described property:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

The debt secured by said Security Deed has been and is hereby declared due because of, among other
possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the
Note and Security Deed. The debt remaining in default, this sale will be made for the purpose of paying the
same and all expenses of this sale, as provided in Security Deed and by law, including attorney's fees (notice
of intent to collect attorney's fees having been given).

Said property will be sold subject to any outstanding ad valorem taxes (including taxes which are a
lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection
of the property, any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters
of record superior to the Security Deed first set out above.

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich
Mortgage Loan Trust, Series 2013-7 is the holder of the Security Deed to the property in accordance with
OCGA § 44-14-162.2.

The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the
debtor is: Rushmore Loan Management Services, LLC, 7515 Irvine Center Drive 1st Floor, Irvine, CA 92618
888-504-7300.

To the best knowledge and belief of the undersigned, the party in possession of the property is
Roseline Y. Charles or a tenant or tenants and said property is more commonly known as **1944 Acorn Lane,
Dacula, Georgia 30019**.

The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the U.S.
Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the security
deed.

 **THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.**

Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage
Loan Trust, Series 2013-7
       as Attorney in Fact for
Roseline Y. Charles

McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
www.foreclosurehotline.net

THIS IS AN ATTEMPT TO COLLECT A DEBT.   ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 22 of the 7th District, Gwinnett County,
Georgia, being Lot 149, Block E, Ivey Chase, Unit II, Phase 2A, as per plat recorded Plat Book 112,
Pages 70 and 71, Gwinnett County, Georgia Records, which plat is incorporated herein and made a
part hereof by reference.

MR/ca    5/3/16
Our file no. 594113 - FT18

 THIS IS AN ATTEMPT TO COLLECT A DEBT.    ANY INFORMATION
OBTAINED WILL BE USED FOR THAT PURPOSE.